PAUL V. BENNETT, ESQ.
State Bar No. 130225
BENNETT LEGAL SERVICES, INC.
18 Bartol Street, Suite 175
San Francisco, CA  94133
eMail: *pbennett@bennettlaw.net*
Ph: 410-353-4994
Attorney for Plaintiff
JENNIFER APPLE

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JENNIFER APPLE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>IONPATH, INC.; PAUL DAVY, Chief Executive Officer of IONPATH, INC., individually; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e,** *et seq.*<br><br>**Race Discrimination in Violation of California Fair Employment and Housing Act ("FEHA") Cal. Gov. Code § 12900** *et seq.*<br><br>**National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e,** *et seq.*<br><br>**National Origin Discrimination in Violation of California Code of Regulations Title 2, Division 4.1, Chapter 5, Subchapter 2, Article 4**<br><br>**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e,** *et seq.*<br><br>**Sex Discrimination in Violation of California Fair Employment and Housing ("FEHA") Cal. Gov. Code § 12900** *et seq.*<br><br>**Failure to Prevent Discrimination in Violation of Cal. Gov't. Code § 12940(k)** |

COMPLAINT

**Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e, *et seq.***

**Hostile Work Environment in Violation of California Fair Employment and Housing Act ("FEHA") Cal. Gov. Code § 12900 *et seq.***

**Retaliation in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e, *et seq.***

**Retaliation in Violation of California Fair Employment and Housing Act ("FEHA") Cal. Gov. Code § 12900 *et seq.***

**Violation of Equal Pay Act of 1963 29 U.S.C. 206(d)**

**Violation of the Lilly Ledbetter Fair Pay Act of 2009 42 U.S.C. 2000a**

**Equal Pay Violations in Violation of California Equal Pay Act, Labor Code § 1197.5; Labor Code § 432.3**

**Wrongful Termination in Violation of California Fair Employment and Housing Act ("FEHA") Cal. Gov. Code § 12900, *et seq.***

**Defamation in Violation of 28 U.S. Code § 4101**

**Defamation in Violation of California Code, Civil Code § 46**

**Violation of California Labor Code, Division 2. Part 3. Chapter 4. Reemployment Privileges §§ 1050-1057**

NOW comes the Plaintiff JENNIFER APPLE ("Plaintiff"), by and through her attorney of record, Paul V. Bennett of Bennett Legal Services, Inc. and hereby complains against IONPATH, INC. ("Ionpath"), and PAUL DAVY, individually ("Davy"), collectively "Defendants," alleging as follows:

## PARTIES

1.      Plaintiff is a Taiwanese 59-year-old female (DOB: February 19, 1965), who at all relevant times was an employee of Ionpath.

2.      Defendant, IONPATH, INC. is a Delaware corporation registered with the State of California, and doing business in California. At all relevant times, Ionpath was Plaintiff's employer with a business location of Menlo Park, California. Additionally, at all relevant times, Ionpath was aware of Plaintiff's sex, race and country of origin.

3.      Defendant, PAUL DAVY, is IONPATH, INC.'s Chief Executive Officer and has held that position since in or around November 2023, and prior to that, was IONPATH, INC.'s Vice President of Customer Experience.  All of the actions undertaken by PAUL DAVY as alleged in this complaint were carried out in the course and scope of his employment with IONPATH, INC. Additionally, at all relevant times, PAUL DAVY was aware of Plaintiff's sex, race, and country of origin.

4.      The true names and capacities, whether individual, corporate or otherwise, of DOES 1 through 10 at this time are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will ask leave to amend her claim for damages to reflect their true names and capacities when the same has been learned. Plaintiff upon information and belief, and thereon alleges, that each of said defendants is responsible jointly and severally, for the events and injuries described herein and caused damages thereby as alleged.

///

5.    Plaintiff upon information and belief, and thereon alleges, that at all times mentioned herein, each and every co-defendant was and is the predecessor-in-interest, successor-in-interest, agent, counselor, employee, servant, partner, franchisee and/or joint venturer of each of the other co-defendants, and in doing the actions hereinafter mentioned, was and/or is acting within the scope of their authority within such agency, employment, counseling, service, partnership, franchise and/or joint venture or single enterprise, and with the permission and consent of each co-defendant. Plaintiff alleges that each of said defendants is responsible, jointly and severally, for the events and injuries described herein and caused damages thereby to Plaintiff as alleged.

6.    At all relevant times, Plaintiff was the only Asian female in a leadership role at Ionpath in the San Mateo office and in fact, within the entire company.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; Equal Pay Act of 1963, 29 U.S.C. § 206(d); Lilly Ledbetter Fair Pay Act, 42 U.S.C. § 2000a; California Fair Employment and Housing Act ("FEHA"), California Government Code § 12900 *et seq.*; California Government Code § 12940(k); California Code of Regulations, Title 2, Div. 4.1, Chapter 5, Subchapter 2, Article 4; § California Equal Pay Act, Labor Code §§ 1197.5, 432.3; 28 U.S.C. § 4101; California Civil Code § 46; and California Labor Code, Div. 2, Part 3, Chapter 4, §§ 1050-1057.

8.    This Court additionally has original jurisdiction over this matter under 28 U.S.C §1332(a)1, as this dispute is between citizens of different states and the amount in controversy is greater than $75,000.

9.    Venue is proper because all or most of the acts that gave rise to said action occurred in the City of Menlo Park, the County of San Mateo, State of California.

## PLAINTIFF'S EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.    On January 15, 2025, Plaintiff filed a Discrimination Complaint with the California Civil Rights Department against Ionpath and received a Notice of Right to Sue on January 15, 2025. Therefore, Plaintiff has exhausted her administrative remedies before timely filing suit.

## GENERAL ALLEGATIONS

11.    Plaintiff is a member of multiple protected groups, to wit:  she is a female, is Asian, is from Taiwan and is over 40 years old (YOB: 1965).  She alleges that, because of her being a member of a protected class, she has been treated differently than other employees with respect to terms, conditions or benefits of her employment, up to and including wrongful termination.

12.    On or about September 1, 2023, Ionpath hired Plaintiff for the position of Controller.  She was hired by David Summa, the CEO ("Summa"), and reported directly to him.

13.    Plaintiff was the only non-white female in a leadership role, from another country (Taiwan), at Ionpath.

14.    During Plaintiff's tenure as Controller for Ionpath, she met or exceeded all reasonable expectations of Ionpath.  One example of her excellence in that role was that she was able to re-negotiate fees with an outside accounting firm (from $30,000 per month down to $15,000 per month).

15.    In or around November, 2023, Paul Davy became the Ionpath's Chief Executive Officer ("CEO"), at which time, he also became Plaintiff's immediate supervisor.  Davy is a non-Asian male.

16.    However, prior to that change, on or about October 23, 2023, Davy in his role as Vice President of Customer Experience, reprimanded Plaintiff for involving herself in issues

relating to an outside consultant, Shaun Colburn ("Colburn") (male and non-Asian).  Davy, in the course of verbally reprimanding her, told her that her English-speaking skills were deficient and specifically referred to her being from another country.

17.     Shortly after Plaintiff had complained to Davy about that incident, via email, he began spreading rumors behind her back, punished her for being an overachiever by saying things such as "Jennifer, I know Asian women work hard. You worked too hard. We need to talk about your vacation." He also said, "Summa asked you to cut Trivium accounting service costs. I am your boss now. You do not have to do that." For each achievement, Plaintiff received verbal abuse and other punishing treatment from Davy for working too hard.

18.     Also in October of 2023, Summa instructed Davy to hire an office manager to report to Plaintiff in order to help with collections, and Colburn also was asked to report to Plaintiff.

19.     However, Davy told Plaintiff that he would not hire an office manager to report to Plaintiff, nor did Colburn begin to report to Plaintiff.

20.     Davy intentionally gave non-Asian employees work assignments to promote them.  For example, he demanded that Accounts Receivable be assigned to Sean Pawlowski ("Pawlowski"), (male and non-Asian) and soon promoted and gave him raises.

21.     Davy told Plaintiff that he and Colburn were hired as a "pair" to Ionpath, indicating that Colburn said that he did not want to report to an Asian female leader who spoke with an Asian accent.  Plaintiff told Davy and Colburn to respect her accent; the reason for her accent was due to the fact that she can speak other languages.  She advised that it wasn't her asking for Colburn to report to her and she immediately addressed that incident with Summa, requesting that the issue between Davy and Colburn be remedied.  Summa did in fact agree to conduct a meeting to solve this issue, but it never happened.

22.    After Plaintiff pushed back against Davy's comments about her English-speaking skills and her being from another country, Davy's attitude towards Plaintiff became more antagonistic.

23.    After he became the CEO in November, 2023 Davy became even more hostile and his treatment of Plaintiff became even more condescending.  Almost immediately after becoming CEO he once more reprimanded Plaintiff for her supposed "poor English skills."

24.    Since November 2023, Ionpath's organizational chart that Davy created and reported to the Board was restructured such that a staff member formerly from Human Resources and later a part-time contractor who had been assigned under Plaintiff was, in fact, not allowed to report to Plaintiff but directly to Davy. All the other non-Asian leaders were allowed to be the true leaders of the staff assigned to them except for Plaintiff.  She was the only Asian female who had been treated differently, unfairly, and illegally, not allowed to have any staff to report to her.

25.    Further, after that change, Plaintiff began to experience even more harassment and discrimination by Defendants.  Some examples of which include, but are not limited to:

    a.    Hubert Noguera ("Noguera"), Ionpath's manufacturing side's manager (male and non-Asian):

    In the first week of May 2024, Plaintiff asked the new CEO, Davy, to do an internal inventory count audit with an outside CPA to true up the financial book data due to there having been approximately $7 million written off before Plaintiff began working for Ionpath, which amount was significantly higher than industry standards.  Davy set Plaintiff up to fail at that task, by not responding to her request for two weeks.  Finally, in the 3rd week of May 2024, Colburn sent Plaintiff a last-minute online meeting invite, indicating that the new CEO (Davy)

had given the inventory audit job to him to conduct the inventory audit, without Plaintiff's advance knowledge or notice.  Noguera came into that meeting yelling at Plaintiff:  "If I say which inventory needs to be written off, that's it, no more discussion."  Plaintiff asked Noguera to stop yelling at her, explained that she was not the one calling for the meeting and pointed out that is illegal to write off whatever inventory by himself, because he's managing the inventories, that's why she as the corporate controller needed to work with an outside CPA to conduct the internal inventory audit. Soon after the meeting, Plaintiff complained to Davy, and demanded a "four-people meeting (a neutral human resources person, Noguera, Davy and Plaintiff) to review the situation and asked for an apology from both Davy and Noguera, but Davy refused and brushed her away saying: "I'm not going to do that."

b.      Sean Pawlowski (male and non-Asian):

Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused.  Here too, he set her on a path of failure, seemingly on purpose.  Davy's refusal led to Pawlowski yelling at Plaintiff during a June 3, 2024, Monday leadership meeting, regarding Ionpath not having sufficient funds to pay certain vendors. Pawlowski had been present at the meeting during which Noguera was allowed to yell at Plaintiff with no negative consequences and apparently Pawlowski thought he could yell at her with impunity as well, which in fact is what happened.  Davy at that meeting seemed to promote the verbal abuse, didn't stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff.  After that meeting, Plaintiff complained to Davy and requested a "four-people meeting

(neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the

situation and asked for an apology from Davy and Pawlowski, but as before,

Davy refused.

c.     Shaun Colburn, (male and non-Asian):

Colburn, the outside contractor (who, according to Davy, was hired as a "pair"

with him (Davy) by Ionpath) telling Plaintiff that Colburn was "untouchable", and

threatening her that Colburn would not report to her.  However, Plaintiff had been

advised by the previous CEO that Colburn was to be reporting to her.

26.    Plaintiff never had any communication issues with Summa, nor with vendors,

auditors, bank executives, or colleagues except for Colburn, Pawlowski and Noguera.

27.    Davy routinely took jobs away from Plaintiff, *e.g.*, financial system control,

inventory audit, accounts receivable collection, and re-assigned those tasks to Colburn.  Each

time Plaintiff had an outstanding accomplishment (saving significant monies for Ionpath), Davy

found a way to claim all the credit for himself and/or Colburn.  Ionpath paid Colburn (who has

no finance background, isn't a CPA, did not know how to write a technical memorandum, did

not know NetSuite (the accounting systems), ridiculously high fees for doing nothing beneficial

for the accounting/finance department, allowing Davy to claim credit for himself and/or Colburn

for the jobs done by Plaintiff.

28.    Davy told Plaintiff several times that she could not speak to Summa about any

problems she was having with him (Davy), *e.g.*, suggesting that Davy not make so many early

payments to vendors, advocating that he not writes company checks to pay outside contractors,

etc.

29.    When Plaintiff conveyed this to Summa, but there was no action to correct the

wrong to Davy; instead, each time when she reported to Summa an unethical business practice

that Davy had done, she got punished by Davy by either verbally abuse, *i.e.*, using a threatening voice or telling her that he had warned her (again) not to talk to Summa; otherwise, denying all requested meetings from Plaintiff, not willing to cooperate with Plaintiff on other tasks to complete on time, that caused Plaintiff a lot of last-minute overtime to be able to complete the tasks that Board members asked because of Davy's unresponsiveness or delayed responses. All other non-Asian leadership and employees were able/allowed to speak to Summa without restriction, except for Plaintiff.

30.    From approximately in or around March 2024 to the end of August 2024, soon after Davy took over the weekly leadership meeting from Summa, he shut Plaintiff off each time she presented or raised her requests or concerns related to accounting or finance (*e.g.*, Accounts Receivable, Accounts Payable, Inventory) to the leaders and would say: "Let's take offline." Plaintiff was the only Asian female leader not allowed to talk in meetings; the non-Asian leaders could speak whatever they wanted.

31.    During approximately that same timeframe, Davy announced that only Plaintiff would be excluded from the interview panel for any new hires, even though Plaintiff as Controller at Ionpath, needed to know who was onboarding and offboarding to update the annual budget, Davy still declined her request to be included. All the non-Asian leaders got to interview the new hires except for Plaintiff.

32.    Also starting in March 2024, Plaintiff was not invited to the new hires' dinner. All non-Asian leaders were.

33.    In August 2024, there was a short cash inflow issue because Davy blamed Plaintiff for the financial report being wrong, but the reality was that Davy failed to get funds and sales and paid vendors too early.

///

34.     Plaintiff often had to remind Davy to follow Ionpath's policies, which he refused to do, and when her reminders became annoying to him, he retaliated and terminated her employment.

35.     Additionally, even though Plaintiff had repeatedly advised Davy to stop early payment to particular vendors outside Ionpath's company policy due to severe cash flow issues due to every month, Davy advised an outside accounting firm to make a lot of early payments to particular vendors without Plaintiff's knowledge; Davy lied to Summa in misrepresenting to him, that Plaintiff was the one who made those early payments instead. Davy and Summa intentionally castigated Plaintiff for failing to report the cash shortages.

36.     On or about July 29, 2024, Plaintiff requested and was granted paid time-off for family leave to run from August 26 through September 9, 2024.

37.     On or about August 16, 2024, during an in-person budget meeting with Summa and Davy, Summa repeatedly challenged Plaintiff about why she kept Colburn on salary for so long and questioned her about Colburn's job description.  Plaintiff reminded Summa he had known since October 2023 that Davy controlled Colburn's hiring and that Davy had assigned Colburn to report to Danielle L. (a non-Asian, female leader) since in or around November 2023. Plaintiff complained to Davy and Summa that Plaintiff believed she was being subjected to ongoing discrimination, as being an Asian female leader, since in or around October 2023.

38.     From around August 17, 2024, through August 20, 2024, Plaintiff also texted Summa to follow up on his concern about that matter and suggested Summa work it out with Davy as to the Colburn issue.

39.     On August 22, 2024, Plaintiff emailed Ionpath that she would need to start said paid leave time two days earlier than expected due to a family emergency.

///

40.    That same day, Plaintiff was fired via voicemail and email, from Davy, without explanation.

41.    Plaintiff has diligently sought replacement employment since the time of her wrongful termination from Ionpath.  However, Davy has thwarted her efforts by his slanderous representations to recruiters who call Ionpath for employment verification purposes.

**COUNT ONE**
**Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, (Title VII)**
**42  U.S.C. § 2000e, *et seq.***
**(Defendant, Ionpath, Inc.)**

42.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

43.    Plaintiff is a member of a protected class, namely, she is Asian.  Plaintiff was the only Asian employee at her work location for Ionpath.

44.    Plaintiff was qualified and satisfactorily performed her duties while working for the Ionpath.

45.    Plaintiff alleges that the above-referenced actions by Ionpath are related to her race because similarly situated non-Asian employees outside of the protected class, were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to:  being given unwarranted discipline and being held to a higher standard in her job performance, receiving public criticism, repeatedly being called out for allegedly poor English-speaking skills, and being retaliated against.

46.    Some examples of which include, but are not limited to:

a.    Hubert Noguera, (non-Asian):

In the first week of May 2024, Plaintiff asked the new CEO, Davy, to do an internal inventory count audit with an outside CPA to true up the financial book

data due to there having been approximately $7 million written off before Plaintiff began working for Ionpath, which amount was significantly higher than industry standards.  Davy set Plaintiff up to fail at that task, by not responding to her request for two weeks.  Finally, in the 3rd week of May 2024, Colburn sent Plaintiff a last-minute online meeting invite, indicating that the new CEO (Davy) had given the inventory audit job to him to conduct the inventory audit, without Plaintiff's advance knowledge or notice.  Noguera came into that meeting yelling at Plaintiff:  "If I say which inventory needs to be written off, that's it, no more discussion."  Plaintiff asked Noguera to stop yelling at her, explained that she was not the one calling for the meeting and pointed out that is illegal to write off whatever inventory by himself, because he's managing the inventories, that's why she as the corporate controller needed to work with an outside CPA to conduct the internal inventory audit. Soon after the meeting, Plaintiff complained to Davy, and demanded a "four-people meeting (a neutral human resources person, Noguera, Davy and Plaintiff) to review the situation and asked for an apology from both Davy and Noguera, but Davy refused and brushed her away saying: "I'm not going to do that."

b.      Sean Pawlowski (non-Asian):

Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused.  Here too, he set her on a path of failure, seemingly on purpose.  Davy's refusal led to Pawlowski yelling at Plaintiff during a June 3, 2024, Monday leadership meeting, regarding Ionpath not having sufficient funds to pay certain vendors. (Pawlowski had been present at the meeting during which Noguera was

allowed to yell at Plaintiff with no negative consequences and apparently

Pawlowski thought he could yell at her with impunity as well, which in fact is

what happened.)  Davy at that meeting seemed to promote the verbal abuse, didn't

stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff.  After

that meeting, Plaintiff complained to Davy and requested a "four-people meeting

(neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the

situation and asked for an apology from Davy and Pawlowski, but as before,

Davy refused.

    c.     Shaun Colburn, (non-Asian):

Colburn, the outside contractor (who, according to Davy, was hired as a "pair"

with him (Davy) by Ionpath) telling Plaintiff that Colburn was "untouchable", and

threatening her that Colburn would not report to her.  However, Plaintiff had been

advised by the previous CEO that Colburn was to be reporting to her.

47.    The discriminatory actions, as set forth above, have caused and will continue to

cause Plaintiff to suffer loss of earning capacity, severe emotional distress, humiliation, mental

anguish, and incur attorney's fees and litigation costs.

48.    The aforementioned acts constitute unlawful practices pursuant to Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

49.    The effect of the practices complained of above deprived Plaintiff of equal

employment opportunities and otherwise adversely affected her status as an employee because of

her race.

50.    The intentional discriminatory actions of Ionpath, as alleged above, were done

with malice and/or with reckless indifference to Plaintiff's rights.

*///*

51.     As a direct and proximate result of the aforesaid acts of Ionpath, Plaintiff has sustained and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish and has lost and will continue to lose income and benefits in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT TWO**
**Race Discrimination in Violation of California Fair Employment and Housing Act ("FEHA")**
**Cal. Gov. Code § 12900, *et seq.***
**(Defendant, Ionpath, Inc.)**

52.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

53.     At all times relevant herein Plaintiff was an Asian individual.

54.     Plaintiff was highly qualified for the position of Controller which she served as while employed by the Ionpath. In addition, Plaintiff satisfactorily performed her duties as in that role.

55.     Plaintiff alleges that she experienced less favorable treatment than employees of Ionpath with similar positions due to her being Asian.  CEO Davy did not engage in such conduct with any of the other employees under his supervision, all of whom were not Asian, and were not subjected to similar adverse employment actions.

56.     Some examples of which include, but are not limited to:

a.      Hubert Noguera, (non-Asian):

In the first week of May 2024, Plaintiff asked the new CEO, Davy, to do an internal inventory count audit with an outside CPA to true up the financial book data due to there having been approximately $7 million written off before Plaintiff began working for Ionpath, which amount was significantly higher than industry

standards.  Davy set Plaintiff up to fail at that task, by not responding to her request for two weeks.  Finally, in the 3rd week of May 2024, Colburn sent Plaintiff a last-minute online meeting invite, indicating that the new CEO (Davy) had given the inventory audit job to him to conduct the inventory audit, without Plaintiff's advance knowledge or notice.  Noguera came into that meeting yelling at Plaintiff:  "If I say which inventory needs to be written off, that's it, no more discussion."  Plaintiff asked Noguera to stop yelling at her, explained that she was not the one calling for the meeting and pointed out that is illegal to write off whatever inventory by himself, because he's managing the inventories, that's why she as the corporate controller needed to work with an outside CPA to conduct the internal inventory audit. Soon after the meeting, Plaintiff complained to Davy, and demanded a "four-people meeting (a neutral human resources person, Noguera, Davy and Plaintiff) to review the situation and asked for an apology from both Davy and Noguera, but Davy refused and brushed her away saying: "I'm not going to do that."

b.     Sean Pawlowski (non-Asian):

Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused.  Here too, he set her on a path of failure, seemingly on purpose.  Davy's refusal led to Pawlowski yelling at Plaintiff during a June 3, 2024, Monday leadership meeting, regarding Ionpath not having sufficient funds to pay certain vendors. (Pawlowski had been present at the meeting during which Noguera was allowed to yell at Plaintiff with no negative consequences and apparently Pawlowski thought he could yell at her with impunity as well, which in fact is

what happened.)  Davy at that meeting seemed to promote the verbal abuse, didn't

stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff.  After

that meeting, Plaintiff complained to Davy and requested a "four-people meeting

(neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the

situation and asked for an apology from Davy and Pawlowski, but as before,

Davy refused.

c.    Shaun Colburn, (non-Asian):

Colburn, the outside contractor (who, according to Davy, was hired as a "pair"

with him (Davy) by Ionpath) telling Plaintiff that Colburn was "untouchable", and

threatening her that Colburn would not report to her.  However, Plaintiff had been

advised by the previous CEO that Colburn was to be reporting to her.

57.    Plaintiff alleges that the intentional discriminatory action complained of above

was done with malice and/or with reckless indifference to Plaintiff's rights.

58.    As a direct and proximate result of the aforesaid acts of Ionpath, Plaintiff has

sustained and continues to suffer humiliation, emotional distress, loss of reputation, and mental

and physical pain and anguish and has lost and will continue to lose income and benefits in an

amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT THREE**
**National Origin Discrimination in Violation of**
**Title VII of the Civil Rights Act of 1964, (Title VII)**
**42 U.S.C. § 2000e, *et seq.***
**(Defendant, Ionpath, Inc.)**

59.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each

of paragraphs 1 – 41 of this Complaint as if fully stated herein.

///

60.    Plaintiff is a member of a protected class related to her national origin, Taiwan.

61.    Plaintiff was qualified for and satisfactorily performed her duties as Controller with the Ionpath.

62.    Plaintiff alleges that the above-referenced actions by Ionpath are related to her country of origin because similarly situated non-Taiwanese employees outside of the protected class, were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to:  being given unwarranted reprimands, receiving public criticism, repeatedly being called out for allegedly poor English-speaking skills, and being retaliated against.

63.    Some examples of which include, but are not limited to:

a.    Hubert Noguera, (non-Taiwanese):

In the first week of May 2024, Plaintiff asked the new CEO, Davy, to do an internal inventory count audit with an outside CPA to true up the financial book data due to there having been approximately $7 million written off before Plaintiff began working for Ionpath, which amount was significantly higher than industry standards.  Davy set Plaintiff up to fail at that task, by not responding to her request for two weeks.  Finally, in the 3rd week of May 2024, Colburn sent Plaintiff a last-minute online meeting invite, indicating that the new CEO (Davy) had given the inventory audit job to him to conduct the inventory audit, without Plaintiff's advance knowledge or notice.  Noguera came into that meeting yelling at Plaintiff:  "If I say which inventory needs to be written off, that's it, no more discussion."  Plaintiff asked Noguera to stop yelling at her, explained that she was not the one calling for the meeting and pointed out that is illegal to write off whatever inventory by himself, because he's managing the inventories, that's why

she as the corporate controller needed to work with an outside CPA to conduct the internal inventory audit. Soon after the meeting, Plaintiff complained to Davy, and demanded a "four-people meeting (a neutral human resources person, Noguera, Davy and Plaintiff) to review the situation and asked for an apology from both Davy and Noguera, but Davy refused and brushed her away saying: "I'm not going to do that."

b.      Sean Pawlowski (non-Taiwanese):

Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused.  Here too, he set her on a path of failure, seemingly on purpose.  Davy's refusal led to Pawlowski yelling at Plaintiff during a June 3, 2024, Monday leadership meeting, regarding Ionpath not having sufficient funds to pay certain vendors. (Pawlowski had been present at the meeting during which Noguera was allowed to yell at Plaintiff with no negative consequences and apparently Pawlowski thought he could yell at her with impunity as well, which in fact is what happened.)  Davy at that meeting seemed to promote the verbal abuse, didn't stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff.  After that meeting, Plaintiff complained to Davy and requested a "four-people meeting (neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the situation and asked for an apology from Davy and Pawlowski, but as before, Davy refused.

c.      Shaun Colburn (non-Taiwanese):

Colburn, the outside contractor (who, according to Davy, was hired as a "pair" with him (Davy) by Ionpath) telling Plaintiff that Colburn was "untouchable", and

threatening her that Colburn would not report to her.  However, Plaintiff had been

advised by the previous CEO that Colburn was to be reporting to her.

64.    The Ionpath carried out the aforementioned acts of discrimination against Plaintiff

on the basis of her national origin (Taiwan) - a protected class under Title VII.

65.    The aforementioned acts constitute unlawful practices pursuant to Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

66.    The effect of the practices complained of above was to deprive Plaintiff of equal

employment opportunities and otherwise adversely affect her status as an employee because of

her national origin.

67.    The intentional discriminatory actions of Ionpath, as alleged above, were done

with malice and/or with reckless indifference to Plaintiff's rights.

68.    As a direct and proximate result of the Ionpath's discriminatory actions as set

forth above, Plaintiff has suffered lost wages and benefits, severe emotional distress,

diminished professional reputation, humiliation, mental anguish, and incurred attorney's fees and

litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### COUNT FOUR
### National Origin Discrimination in Violation of
### California Code of Regulations
### (Defendant, Ionpath, Inc.)

69.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each

of paragraphs 1 – 41 of this Complaint as if fully stated herein.

70.    Ionpath has discriminated against Plaintiff in the terms and conditions of her

employment on the basis of national origin (Taiwanese) in violation of California Code of

Regulations Title 2, Division 4.1, Chapter 5, Subchapter 2, Article 4.

71.    The above-described acts and practices of the Ionpath constitute unlawful discriminatory employment practices within the meaning of Article 4 cited above.

72.    Some examples of which include, but are not limited to:

a.    Hubert Noguera, (non-Taiwanese):

In the first week of May 2024, Plaintiff asked the new CEO, Davy, to do an internal inventory count audit with an outside CPA to true up the financial book data due to there having been approximately $7 million written off before Plaintiff began working for Ionpath, which amount was significantly higher than industry standards.  Davy set Plaintiff up to fail at that task, by not responding to her request for two weeks.  Finally, in the 3rd week of May 2024, Colburn sent Plaintiff a last-minute online meeting invite, indicating that the new CEO (Davy) had given the inventory audit job to him to conduct the inventory audit, without Plaintiff's advance knowledge or notice.  Noguera came into that meeting yelling at Plaintiff:  "If I say which inventory needs to be written off, that's it, no more discussion."  Plaintiff asked Noguera to stop yelling at her, explained that she was not the one calling for the meeting and pointed out that is illegal to write off whatever inventory by himself, because he's managing the inventories, that's why she as the corporate controller needed to work with an outside CPA to conduct the internal inventory audit. Soon after the meeting, Plaintiff complained to Davy, and demanded a "four-people meeting (a neutral human resources person, Noguera, Davy and Plaintiff) to review the situation and asked for an apology from both Davy and Noguera, but Davy refused and brushed her away saying: "I'm not going to do that."

///

b.      Sean Pawlowski (non-Taiwanese):

Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused.  Here too, he set her on a path of failure, seemingly on purpose.  Davy's refusal led to Pawlowski yelling at Plaintiff during a June 3, 2024, Monday leadership meeting, regarding Ionpath not having sufficient funds to pay certain vendors. (Pawlowski had been present at the meeting during which Noguera was allowed to yell at Plaintiff with no negative consequences and apparently Pawlowski thought he could yell at her with impunity as well, which in fact is what happened.)  Davy at that meeting seemed to promote the verbal abuse, didn't stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff.  After that meeting, Plaintiff complained to Davy and requested a "four-people meeting (neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the situation and asked for an apology from Davy and Pawlowski, but as before, Davy refused.

c.      Shaun Colburn (non-Taiwanese):

Colburn, the outside contractor (who, according to Davy, was hired as a "pair" with him (Davy) by Ionpath) telling Plaintiff that Colburn was "untouchable", and threatening her that Colburn would not report to her.  However, Plaintiff had been advised by the previous CEO that Colburn was to be reporting to her.

73.      The Ionpath's acts were carried out with malice and reckless disregard for Plaintiff's protected civil rights.

74.      As a direct and proximate result of the aforesaid acts of Ionpath, Plaintiff has sustained and continues to suffer humiliation, emotional distress, loss of reputation, and mental

22

and physical pain and anguish and has lost and will continue to lose income and benefits in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT FIVE**
**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, (Title VII)**
**42 U.S.C. § 2000e, *et seq.***
**(Defendant, Ionpath, Inc.)**

75.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

76.    At all times relevant herein Plaintiff was a female individual.

77.    Plaintiff was highly qualified for the position of Controller and she satisfactorily performed her duties as Controller during her employment with the Ionpath.

78.    Plaintiff was harassed and discriminated against by Ionpath as described above.

79.    Plaintiff alleges that she experienced less favorable treatment than employees of Ionpath with similar positions due to her sex, some examples of which include, but are not limited to:

      a.    Hubert Noguera, (male):

      In the first week of May 2024, Plaintiff asked the new CEO, Davy, to do an internal inventory count audit with an outside CPA to true up the financial book data due to there having been approximately $7 million written off before Plaintiff began working for Ionpath, which amount was significantly higher than industry standards.  Davy set Plaintiff up to fail at that task, by not responding to her request for two weeks.  Finally, in the 3rd week of May 2024, Colburn sent Plaintiff a last-minute online meeting invite, indicating that the new CEO (Davy) had given the inventory audit job to him to conduct the inventory audit, without

Plaintiff's advance knowledge or notice. Noguera came into that meeting yelling at Plaintiff: "If I say which inventory needs to be written off, that's it, no more discussion." Plaintiff asked Noguera to stop yelling at her, explained that she was not the one calling for the meeting and pointed out that is illegal to write off whatever inventory by himself, because he's managing the inventories, that's why she as the corporate controller needed to work with an outside CPA to conduct the internal inventory audit. Soon after the meeting, Plaintiff complained to Davy, and demanded a "four-people meeting (a neutral human resources person, Noguera, Davy and Plaintiff) to review the situation and asked for an apology from both Davy and Noguera, but Davy refused and brushed her away saying: "I'm not going to do that."

b.      Sean Pawlowski (male):

Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused. Here too, he set her on a path of failure, seemingly on purpose. Davy's refusal led to Pawlowski yelling at Plaintiff during a June 3, 2024, Monday leadership meeting, regarding Ionpath not having sufficient funds to pay certain vendors. (Pawlowski had been present at the meeting during which Noguera was allowed to yell at Plaintiff with no negative consequences and apparently Pawlowski thought he could yell at her with impunity as well, which in fact is what happened.) Davy at that meeting seemed to promote the verbal abuse, didn't stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff. After that meeting, Plaintiff complained to Davy and requested a "four-people meeting (neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the

situation and asked for an apology from Davy and Pawlowski, but as before,

Davy refused.

    c.    Shaun Colburn (male):

Colburn, the outside contractor (who, according to Davy, was hired as a "pair"

with him (Davy) by Ionpath) telling Plaintiff that Colburn was "untouchable", and

threatening her that Colburn would not report to her.  However, Plaintiff had been

advised by the previous CEO that Colburn was to be reporting to her.

80.    Plaintiff alleges that the intentional discriminatory actions complained of above

were done with malice and/or with reckless indifference to Plaintiff's rights.

81.    As a direct and proximate result of the aforesaid acts of Ionpath, Plaintiff has

sustained and continues to suffer humiliation, emotional distress, loss of reputation, and mental

and physical pain and anguish and has lost and will continue to lose income and benefits in an

amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT SIX**
**Sex Discrimination in Violation of California Fair Employment and Housing ("FEHA")**
**Cal. Gov. Code § 12900 *et seq.***
**(Defendant, Ionpath, Inc.)**

82.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each

of paragraphs 1 – 41 of this Complaint as if fully stated herein.

83.    At all times relevant herein Plaintiff was a female individual.

84.    Plaintiff was highly qualified for the position of Controller while in the employ by

the Ionpath. In addition, Plaintiff satisfactorily performed her duties as Controller during her

employment with the Ionpath.

///

85.    Plaintiff alleges that she experienced less favorable treatment than employees of Ionpath with similar positions due to her sex, some examples of which include, but are not limited to:

a.    Hubert Noguera, (male):

In the first week of May 2024, Plaintiff asked the new CEO, Davy, to do an internal inventory count audit with an outside CPA to true up the financial book data due to there having been approximately $7 million written off before Plaintiff began working for Ionpath, which amount was significantly higher than industry standards.  Davy set Plaintiff up to fail at that task, by not responding to her request for two weeks.  Finally, in the 3rd week of May 2024, Colburn sent Plaintiff a last-minute online meeting invite, indicating that the new CEO (Davy) had given the inventory audit job to him to conduct the inventory audit, without Plaintiff's advance knowledge or notice.  Noguera came into that meeting yelling at Plaintiff:  "If I say which inventory needs to be written off, that's it, no more discussion."  Plaintiff asked Noguera to stop yelling at her, explained that she was not the one calling for the meeting and pointed out that is illegal to write off whatever inventory by himself, because he's managing the inventories, that's why she as the corporate controller needed to work with an outside CPA to conduct the internal inventory audit. Soon after the meeting, Plaintiff complained to Davy, and demanded a "four-people meeting (a neutral human resources person, Noguera, Davy and Plaintiff) to review the situation and asked for an apology from both Davy and Noguera, but Davy refused and brushed her away saying: "I'm not going to do that."

///

b.    Sean Pawlowski (male):

Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused.  Here too, he set her on a path of failure, seemingly on purpose.  Davy's refusal led to Pawlowski yelling at Plaintiff during a June 3, 2024, Monday leadership meeting, regarding Ionpath not having sufficient funds to pay certain vendors. (Pawlowski had been present at the meeting during which Noguera was allowed to yell at Plaintiff with no negative consequences and apparently Pawlowski thought he could yell at her with impunity as well, which in fact is what happened.)  Davy at that meeting seemed to promote the verbal abuse, didn't stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff.  After that meeting, Plaintiff complained to Davy and requested a "four-people meeting (neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the situation and asked for an apology from Davy and Pawlowski, but as before, Davy refused.

c.    Shaun Colburn, (male):

Colburn, the outside contractor (who, according to Davy, was hired as a "pair" with him (Davy) by Ionpath) telling Plaintiff that Colburn was "untouchable", and threatening her that Colburn would not report to her.  However, Plaintiff had been advised by the previous CEO that Colburn was to be reporting to her.

86.    Plaintiff alleges that the intentional discriminatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

87.    As a direct and proximate result of the aforesaid acts of Ionpath, Plaintiff has sustained and continues to suffer humiliation, emotional distress, loss of reputation, and mental

and physical pain and anguish and has lost and will continue to lose income and benefits in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT SEVEN**
**Failure to Prevent Discrimination in Violation of**
**(Cal. Gov't. Code § 12940(k))**
**(Defendant, Ionpath, Inc.)**

88.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

89.     California Government Code § 12940(k) requires employers to "take all reasonable steps necessary to prevent discrimination and harassment from occurring," a mandate that includes the workplace discrimination based on sex.

90.     Plaintiff was an employee of Ionpath.

91.     Plaintiff was subjected to discrimination during the course of her employment.

92.     Through their above-described acts and omissions, Ionpath failed in their affirmative duty to take all reasonable steps necessary to prevent discrimination against the Plaintiff based on sex, in violation of Cal. Gov't Code § 12940(k).

93.     Ionpath's failure to take all reasonable steps to prevent sex-based discrimination was the main factor causing Plaintiff's harm.

94.     As a direct and proximate result of Ionpath's actions, Plaintiff has suffered and continues to suffer injury, including but not limited to lost wages, lower wages, lost seniority, other compensation and benefits in amounts to be proven at trial, and emotional distress, entitling her to compensatory damages in an amount to be proven at trial.

95.     Ionpath committed the unlawful acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive and

in conscious disregard of the rights of Plaintiff.  Plaintiff is therefore entitled to recover punitive damages from Ionpath in an amount to be proven at trial.

96.     Plaintiff is also entitled to reasonable attorneys' fees and costs pursuant to Cal. Gov't Code § 12965(b).

97.     The unlawful employment practices complained of above were intentional, unwelcome, and personally hostile and offensive to Plaintiff.

98.     The aforementioned conduct of Ionpath's managerial and supervisory employees was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and to create an intimidating, hostile and offensive working environment for Plaintiff.

99.     The intentional discriminatory actions of Ionpath and its managerial and supervisory employees against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

100.     Ionpath knew or should have known of the aforementioned conduct of its managerial and supervisory employees against Plaintiff and failed to take prompt corrective action.

101.     Ionpath is vicariously liable for the conduct of its managerial and supervisory employees carried out in the course and scope of their employment. All of the acts set forth above by the managerial and supervisory employees were carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relied as more fully set forth below.

///

///

///

**COUNT EIGHT**
**Hostile Work Environment in Violation of**
**Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. § 2000e, *et seq*.**
**(Defendant, Ionpath, Inc.)**

102.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

103.    Examples of how Ionpath created a hostile work environment for Plaintiff include but are not limited to:

a.    Hubert Noguera, (male and non-Asian):

In the first week of May 2024, Plaintiff asked the new CEO, Davy, to do an internal inventory count audit with an outside CPA to true up the financial book data due to there having been approximately $7 million written off before Plaintiff began working for Ionpath, which amount was significantly higher than industry standards.  Davy set Plaintiff up to fail at that task, by not responding to her request for two weeks.  Finally, in the 3rd week of May 2024, Colburn sent Plaintiff a last-minute online meeting invite, indicating that the new CEO (Davy) had given the inventory audit job to him to conduct the inventory audit, without Plaintiff's advance knowledge or notice.  Noguera came into that meeting yelling at Plaintiff:  "If I say which inventory needs to be written off, that's it, no more discussion."  Plaintiff asked Noguera to stop yelling at her, explained that she was not the one calling for the meeting and pointed out that is illegal to write off whatever inventory by himself, because he's managing the inventories, that's why she as the corporate controller needed to work with an outside CPA to conduct the internal inventory audit. Soon after the meeting, Plaintiff complained to Davy, and demanded a "four-people meeting (a neutral human resources person,

30
COMPLAINT

Noguera, Davy and Plaintiff) to review the situation and asked for an apology from both Davy and Noguera, but Davy refused and brushed her away saying: "I'm not going to do that."

b.    Sean Pawlowski (male and non-Asian):

Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused.  Here too, he set her on a path of failure, seemingly on purpose.  Davy's refusal led to Pawlowski yelling at Plaintiff during a June 3, 2024, Monday leadership meeting, regarding Ionpath not having sufficient funds to pay certain vendors. (Pawlowski had been present at the meeting during which Noguera was allowed to yell at Plaintiff with no negative consequences and apparently Pawlowski thought he could yell at her with impunity as well, which in fact is what happened.)  Davy at that meeting seemed to promote the verbal abuse, didn't stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff.  After that meeting, Plaintiff complained to Davy and requested a "four-people meeting (neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the situation and asked for an apology from Davy and Pawlowski, but as before, Davy refused.

c.    Shaun Colburn, (male and non-Asian):

Colburn, the outside contractor (who, according to Davy, was hired as a "pair" with him (Davy) by Ionpath) telling Plaintiff that Colburn was "untouchable", and threatening her that Colburn would not report to her.  However, Plaintiff had been advised by the previous CEO that Colburn was to be reporting to her.

///

d.      Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused.  Here too, he set her on a path of failure, seemingly on purpose. Davy's refusal led to Sean Pawlowski, Customer Success Manager (male and non-Asian) yelling at Plaintiff during a June 3, 2024, Monday leadership meeting due to Ionpath not having sufficient funds to pay certain vendors. (Pawlowski had been present at the meeting during which Noguera was allowed to yell at Plaintiff with no negative consequences and apparently Pawlowski thought he could yell at too, which in fact is what happened.)  Davy at that meeting seemed to promote the verbal abuse, didn't stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff.  Here too, after that meeting, Plaintiff complained to Davy and requested a "four-people meeting (neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the situation and asked for an apology from Davy and Pawlowski, but again Davy refused.

e.      Davy routinely took jobs away from Plaintiff, *e.g.*, financial system control, inventory audit, accounts receivable collection, and re-assigned those tasks to Colburn.  Each time Plaintiff had an outstanding accomplishment (saving significant monies for Ionpath), Davy found a way to claim all the credit for himself and/or Colburn.  Ionpath paid Colburn, who has no finance background, isn't a CPA, did not know how to write a technical memorandum, did not know NetSuite (the accounting systems), ridiculously high fees for doing nothing beneficial for the accounting/finance department, allowing Davy to claim credit for himself and/or Colburn for the jobs done by Plaintiff.

///

f.   On or about October 23, 2023, Davy reprimanded Plaintiff for involving herself in issues relating to Colburn (who worked under Davy).  Davy, in the course of verbally reprimanding her, told her that her English-speaking skills were deficient and specifically referred to her being from another country.  When Plaintiff pushed back against his comments about her English-speaking skills and her being from another country, Davy's attitude towards Plaintiff became more antagonistic.

104.   Ionpath's hostile conduct was continuing, severe and pervasive, and constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

105.   As a direct and proximate result of the hostile work environment created by Ionpath, Plaintiff has suffered emotional distress, incurred attorney's fees and litigation costs.

**COUNT NINE**
**Hostile Work Environment in Violation of**
**California Fair Employment and Housing Act ("FEHA")**
**Cal. Gov. Code § 12900 *et seq.***
**(Defendant, Ionpath, Inc.; Defendant, Paul Davy, individually)**

106.   Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

107.   Examples of how Defendants created a hostile work environment for Plaintiff include but are not limited to:

a.   Hubert Noguera, (male and non-Asian):

In the first week of May 2024, Plaintiff asked the new CEO, Davy, to do an internal inventory count audit with an outside CPA to true up the financial book data due to there having been approximately $7 million written off before Plaintiff began working for Ionpath, which amount was significantly higher than industry standards.  Davy set Plaintiff up to fail at that task, by not responding to her

request for two weeks.  Finally, in the 3rd week of May 2024, Colburn sent Plaintiff a last-minute online meeting invite, indicating that the new CEO (Davy) had given the inventory audit job to him to conduct the inventory audit, without Plaintiff's advance knowledge or notice.  Noguera came into that meeting yelling at Plaintiff:  "If I say which inventory needs to be written off, that's it, no more discussion."  Plaintiff asked Noguera to stop yelling at her, explained that she was not the one calling for the meeting and pointed out that is illegal to write off whatever inventory by himself, because he's managing the inventories, that's why she as the corporate controller needed to work with an outside CPA to conduct the internal inventory audit. Soon after the meeting, Plaintiff complained to Davy, and demanded a "four-people meeting (a neutral human resources person, Noguera, Davy and Plaintiff) to review the situation and asked for an apology from both Davy and Noguera, but Davy refused and brushed her away saying: "I'm not going to do that."

b.      Sean Pawlowski (male and non-Asian):

Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused.  Here too, he set her on a path of failure, seemingly on purpose.  Davy's refusal led to Pawlowski yelling at Plaintiff during a June 3, 2024, Monday leadership meeting, regarding Ionpath not having sufficient funds to pay certain vendors. (Pawlowski had been present at the meeting during which Noguera was allowed to yell at Plaintiff with no negative consequences and apparently Pawlowski thought he could yell at her with impunity as well, which in fact is what happened.)  Davy at that meeting seemed to promote the verbal abuse, didn't

34

stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff.  After that meeting, Plaintiff complained to Davy and requested a "four-people meeting (neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the situation and asked for an apology from Davy and Pawlowski, but as before, Davy refused.

c.      Shaun Colburn, (male and non-Asian):

Colburn, the outside contractor (who, according to Davy, was hired as a "pair" with him (Davy) by Ionpath) telling Plaintiff that Colburn was "untouchable", and threatening her that Colburn would not report to her.  However, Plaintiff had been advised by the previous CEO that Colburn was to be reporting to her.

d.      Plaintiff had asked Davy to allow her to explain Ionpath's insufficiency issues to the Ionpath leadership at their recurring Monday morning meetings, but Davy refused. Here too, he set her on a path of failure, seemingly on purpose. Davy's refusal led to Sean Pawlowski, Customer Success Manager (male and non-Asian) yelling at Plaintiff during a June 3, 2024, Monday leadership meeting due to Ionpath not having sufficient funds to pay certain vendors. (Pawlowski had been present at the meeting during which Noguera was allowed to yell at Plaintiff with no negative consequences and apparently Pawlowski thought he could yell at too, which in fact is what happened.)  Davy at that meeting seemed to promote the verbal abuse, didn't stop Pawlowski's yelling and allowed hostile treatment toward Plaintiff.  Here too, after that meeting, Plaintiff complained to Davy and requested a "four-people meeting (neutral human resources person, Davy, Pawlowski and Plaintiff) to revisit the situation and asked for an apology from Davy and Pawlowski, but again Davy refused.

e.      Davy routinely took jobs away from Plaintiff, *e.g.*, financial system control, inventory audit, accounts receivable collection, and re-assigned those tasks to Colburn.  Each time Plaintiff had an outstanding accomplishment (saving significant monies for Ionpath), Davy found a way to claim all the credit for himself and/or Colburn.  Ionpath paid Colburn, who has no finance background, isn't a CPA, did not know how to write a technical memorandum, did not know NetSuite (the accounting systems), ridiculously high fees for doing nothing beneficial for the accounting/finance department, allowing Davy to claim credit for himself and/or Colburn for the jobs done by Plaintiff.

f.      On or about October 23, 2023, Davy reprimanded Plaintiff for involving herself in issues relating to Colburn (who worked under Davy).  Davy, in the course of verbally reprimanding her, told her that her English-speaking skills were deficient and specifically referred to her being from another country.  When Plaintiff pushed back against his comments about her English-speaking skills and her being from another country, Davy's attitude towards Plaintiff became more antagonistic.

108.    Defendants' hostile conduct was continuing, severe and pervasive, and constituted a violation of FEHA, Cal. Gov. Code § 12900 *et seq.*

109.    As a direct and proximate result of the hostile work environment created by Defendants, Plaintiff has suffered emotional distress, incurred attorney's fees and litigation costs.

///

///

///

///

**COUNT TEN**
**Retaliation in Violation of**
**Title VII of the Civil Rights Act of 1964 (Title VII)**
**42 U.S.C. § 2000e, *et seq*.**
**(Defendant, Ionpath, Inc.)**

110.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

111.    When Plaintiff repeatedly requested Human Resources intervention by way of "four-people meetings" as detailed above, to address discriminatory behaviors by Davy and others at Ionpath, that constituted "a legally protected activity" under Title VII.

112.    Ionpath knew of that legally protected activity.

113.    The ongoing hostile work environment and termination of employment as set forth above amounted to illegal retaliation.

114.    The aforementioned acts of retaliation for complaining of discrimination constitute unlawful employment practices pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

115.    The effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her legally protected activities.

116.    The unlawful employment practices complained above were intentional.

117.    The intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

118.    As a direct and proximate result of the Ionpath's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

///

**COUNT ELEVEN**
**Retaliation in Violation of**
**Cal. Gov. Code § 12900 *et seq.***
**(Defendant, Ionpath, Inc.)**

119.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

120.    Plaintiff engaged in protected activity when she repeatedly requested Human Resources intervention by way of "four-people meetings" as detailed above, to address discriminatory behaviors by Davy and others at Ionpath.

121.    In retaliation for Plaintiff's complaints, Ionpath failed to address Plaintiff's continued requests that Ionpath cease, address and correct these discriminatory acts and practices and Ionpath continued to engage with such acts and practices, ultimately culminating in her employment termination.

122.    There is a causal connection between Plaintiff's complaints and requests for human resources intervention, and the materially adverse actions and disparate treatment taken against Plaintiff by Ionpath.

123.    The intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

124.    As a direct and proximate result of the Ionpath's discriminatory actions, Plaintiff has suffered lost wages and emotional distress, and incurred attorneys' fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

///

///

///

///

**COUNT TWELVE**
**Violation of Equal Pay Act of 1963**
**29 U.S.C. 206(d)**
**(Defendant, Ionpath, Inc.)**

125.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

126.    The Equal Pay Act prohibits sex-based wage discrimination between males and females in the same workplace who perform jobs that require substantially equal skills and responsibility under comparable working conditions.

127.    Plaintiff was denied her performance review and raise requests starting in or around June 2024.  Ionpath however, gave raises to the other leaders at the same level as Plaintiff, one female and five males.

128.    Davy even went so far as to cancel all Plaintiff's in-person meeting requests to discuss performance review and a raise from approximately July to August 2024.

129.    Further, Plaintiff, in spite of representations by Summa to the contrary upon initial hire, was not allowed by Davy to have any direct reports, which was then used against her as to reviews and raises.

130.    For example, Davy represented to a board member that they had put Sophia from Human Resources, under Plaintiff's supervision, but in fact, Davy told Plaintiff that Sophia reported to him (Davy), not Plaintiff, and that all Human Resources matters were controlled by Davy instead of Plaintiff and went so far as to threaten Plaintiff not to tell the board members the truth.

131.    Plaintiff repeatedly made complaints about this to Davy and to Summa but was ignored.

///

132.    Then all this was used against Plaintiff, by Davy, as a female leader, in that she was not allowed to have any staff report to her and that she had never had a performance review or any raises.

133.    The male employees at the same level as Plaintiff were given reviews and upon information and belief, raises.

134.    Plaintiff has suffered Equal Pay Violations in that:

a.    Work colleagues at the same level as Plaintiff, of the opposite sex were paid a higher salary;

b.    They were doing similar work in a similar environment under similar working conditions; and

c.    The unequal pay was based on sex.

**COUNT THIRTEEN**
**Violation of Lilly Ledbetter Fair Pay Act of 2009**
**42 U.S.C. 2000a**
**(Defendant, Ionpath, Inc.)**

135.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

136.    The Lilly Ledbetter Fair Pay Act prohibits discrimination in compensation because of race, color, religion, sex or national origin.  It covers wages, benefits and other compensation.

137.    Plaintiff was denied her performance review and raise requests starting in or around June 2024.  Ionpath however, gave raises to other leaders at the same level as Plaintiff and all of whom were non-Asian, five of whom were males (one was a female) and none of whom were from Taiwan.

///

a.    For example, in or around July 2024, Davy allowed Danielle L. to give a raise to Alda Z (another non-Asian female reporting to Danielle L.)

b.    A few weeks later, still in July 2024, Davy emailed Sophia (former Human Resources), demanded a raise be given to Danielle L., and she was in fact given a raise.  This occurred shortly after Plaintiff had requested her performance review from Davy but was denied the same.

138.    In fact, Davy went so far as to cancel all Plaintiff's in-person meeting requests from approximately July to August 2024.

139.    Further, Plaintiff, in spite of representations by Summa to the contrary upon initial hire, was not allowed by Davy to have any direct reports, which was then used against her as to reviews and raises.

140.    For example, Davy represented to a board member that they had put Sophia from Human Resources, under Plaintiff's supervision, but in fact, Davy told Plaintiff that Sophia reported to him (Davy), not Plaintiff, and that all Human Resources matters were controlled by Davy instead of Plaintiff and went so far as to threaten Plaintiff not to tell the board members the truth.

141.    Plaintiff emailed Davy at least three times inquiring why he gave raises to Danielle L. for HR performance review filing and revising the budget. Davy never responded to her emails and ignored all her in-person meetings for performance reviews and requested raises.

142.    Further, Plaintiff repeatedly made complaints about this treatment to Davy and to Summa, but she was ignored.

143.    Those incidents were then used against Plaintiff, by Davy, as an Asian female leader, in that she was not allowed to have any staff report to her and that she had never had a performance review or any raises.

144.    All non-Asian employees at the same level as Plaintiff were given reviews and upon information and belief, raises.  Further, five were male and one female.

145.    Plaintiff has suffered violations of the Lilly Ledbetter Act in that:

    a.    Work colleagues at the same level as Plaintiff, all non-Asian, were paid a higher salary;

    b.    They were doing similar work in a similar environment under similar working conditions; and

    c.    The unequal pay was based on race, sex and national origin.

146.    The Lilly Ledbetter Act provides for additional relief in that liability may accrue, allowing the aggrieved person to recovery back pay for up to two years preceding the filing of Equal Pay Violations.

**COUNT FOURTEEN**
**California Equal Pay Act Violations**
**Labor Code §§ 1197.5 and 432.3**
**(Defendant, Ionpath, Inc.)**

147.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

148.    Plaintiff was denied her performance review and raise requests starting in or around June 2024.  Ionpath however, gave raises to other leaders at the same level as Plaintiff and all of whom were non-Asian, one was female and five were male and none of whom were from Taiwan.

    a.    For example, sometime around July or August in 2024, Danielle L. (non-Asian and not from Taiwan) was given a raise.  This occurred shortly after Plaintiff had requested her performance review from Davy but was denied the same.

42

149.    In fact, Davy went so far as to cancel all Plaintiff's in-person meeting requests from approximately July to August 2024.

150.    Further, Plaintiff, in spite of representations by Summa to the contrary upon initial hire, was not allowed by Davy to have any direct reports, which was then used against her as to reviews and raises.

151.    For example, Davy represented to a board member that they had put Sophia from Human Resources, under Plaintiff's supervision, but in fact, Davy told Plaintiff that Sophia reported to him (Davy), not Plaintiff, and that all Human Resources matters were controlled by Davy instead of Plaintiff and went so far as to threaten Plaintiff not to tell the board members the truth.

152.    Plaintiff emailed Davy at least three times inquiring why he gave raises to Danielle L. for HR performance review filings and revising the budget. Davy never responded to her emails and ignored all her in-person meetings for performance reviews and requested raises.

153.    Further, Plaintiff repeatedly made complaints about this treatment to Davy and to Summa but she was ignored.

154.    Those incidents were then used against Plaintiff, by Davy, as an Asian female leader, in that she was not allowed to have any staff report to her and that she had never had a performance review or any raises.

155.    All non-Asian employees at the same level as Plaintiff were given reviews and upon information and belief, raises, five were also male and one was female.

156.    Under California law, an employee must show that he or she is being paid less than an employee or employees of the opposite sex, of another race, or of another ethnicity who is performing substantially similar work.  Clearly Plaintiff has shown all of those:

a.    All of the males were paid more;

b.     All the non-Asians were paid more; and

c.     She was the only Taiwanese person paid less.

157.     Ionpath had no legitimate reason for the pay inequity.

**COUNT FIFTEEN**
**Wrongful Termination in Violation of**
**California Fair Employment and Housing Act ("FEHA")**
**Cal. Gov. Code § 12900, *et seq.***
**(Defendant, Ionpath, Inc.)**

158.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

159.     Plaintiff was employed by Ionpath.

160.     Ionpath terminated Plaintiff in violation of the FEHA, which constitutes a termination in violation of public policy.

161.     As a direct and proximate result of the aforesaid acts of Ionpath, Plaintiff has sustained and continues to suffer embarrassment, emotional distress, loss of reputation, and mental and physical pain and anguish and has lost and will continue to lose income and benefits in an amount to be proven at trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code Section 3287 and/or any other provision of law providing for prejudgment interest.

162.     The conduct of Ionpath, and each of its agents and employees, as described above, was contemptible and was carried out with deliberate and conscious disregard for Plaintiff's rights. Ionpath, its agents and employees were aware of the probable detrimental consequences of their conduct and willfully and deliberately failed to avoid those consequences. Ionpath's conduct constituted malice, oppression or fraud such that Plaintiff is entitled to punitive damages under California law, Civil Code Section 3294, in an amount to punish Ionpath or to set an example.

**COUNT SIXTEEN**
**Defamation in Violation of**
**28 U.S. Code § 4101**
**(Defendant, Ionpath, Inc.; Defendant, Paul Davy, individually)**

163.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

164.    Plaintiff has been defamed by Davy, who was acting in the course and scope of his employment with Ionpath when he made the defamatory remarks.  As such, both Defendants are jointly and severally liable for those resulting damages as allowed by law.

165.    Some examples of the defamatory remarks include but are not limited to:

a.    Upon information and belief, shortly after Plaintiff's wrongful termination, Davy called Ionpath's contact at the outside accounting firm used by Defendants and told that person (someone with whom Plaintiff had previously worked) that "Jennifer Apple is a lousy controller, Dave Summa and I fired her on 8/22/24" then, asked Plaintiff's replacement to work with that person moving forward.  That particular person, not wanting to have a conflict with Davy, simply said that "Jennifer Apple is the best controller I have ever worked with."  Said accounting person knowing what a benefit Plaintiff had been to Ionpath especially regarding problematic early payments to Davy's favorite vendors behind Plaintiff's back.

b.    With regard to recruiters assisting Plaintiff in her job search, one of whom called Ionpath to verify Plaintiff's position there and was told by Davy "Jennifer Apple performed poorly. I fired her; I'd not hire her if I were you."  Plaintiff learned of this incident in late October 2024 over the phone with said recruiter.

With regard to that particular position, Plaintiff learned another candidate had filled it after the recruiter spoke with Davy.

c.      Plaintiff worked with another recruiter from another firm, when in November 2024, the same thing happened when said recruiter called to verify her position at Ionpath and Davy slandered her to that recruiter.  "Jennifer Apple performed poorly. I fired her; I'd not hire her if I were you."  Again, Plaintiff later learned that another candidate had filled *that* position after the recruiter spoke with Davy.

d.      Plaintiff worked with a third recruiter from a third firm in her job search in December 2024, and the same thing happened here as well.  Davy told that recruiter: "Jennifer Apple performed poorly. I fired her; I'd not hire her if I were you."  Once again, Plaintiff subsequently learned that another candidate had filled the potential position.

166.    Davy lied to recruiters about Plaintiff's qualifications and skills.  He did so at least three times.  Based on information and belief, Plaintiff contends that Davy's false and defamatory statements cost Plaintiff replacement employment and damaged her reputation.

167.    Plaintiff is a highly qualified financial professional who has been actively seeking replacement employment since Ionpath wrongfully terminated her employment with them.

168.    Plaintiff has been hindered in her job search by Davy's verbal disparagement about her work performance.

///

///

///

///

COMPLAINT

**COUNT SEVENTEEN**
**Defamation in Violation of**
**California Code, Civil Code § 46**
**(Defendant, Ionpath, Inc.; Defendant, Paul Davy, individually)**

169.   Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

170.   Plaintiff has been defamed by Davy, who was acting in the course and scope of his employment with Ionpath when he made the defamatory remarks.  As such, both Defendants are jointly and severally liable for those resulting damages as allowed by law.

171.   Some examples of the false and defamatory statements include but are not limited to:

   a.   Upon information and belief, shortly after Plaintiff's wrongful termination, Davy called Ionpath's contact at the outside accounting firm used by Defendants and told that person (someone with whom Plaintiff had previously worked) that "Jennifer Apple is a lousy controller, Dave Summa and I fired her on 8/22/24" then, asked Plaintiff's replacement to work with that person moving forward.  That particular person, not wanting to have a conflict with Davy, simply said that "Jennifer Apple is the best controller I have ever worked with."  Said accounting person knowing what a benefit Plaintiff had been to Ionpath especially regarding problematic early payments to Davy's favorite vendors behind Plaintiff's back.

   b.   With regard to recruiters assisting Plaintiff in her job search, one of whom called Ionpath to verify Plaintiff's position there and was told by Davy "Jennifer Apple performed poorly. I fired her; I'd not hire her if I were you."  Plaintiff learned of this incident in late October 2024 over the phone with said recruiter.

With regard to that particular position, Plaintiff learned another candidate had filled it after the recruiter spoke with Davy.

c.    Plaintiff worked with another recruiter from another firm, when in November 2024, the same thing happened when said recruiter called to verify her position at Ionpath and Davy slandered her to that recruiter. "Jennifer Apple performed poorly. I fired her; I'd not hire her if I were you." Again, Plaintiff later learned that another candidate had filled *that* position after the recruiter spoke with Davy.

d.    Plaintiff worked with a third recruiter from a third firm in her job search in December 2024, and the same thing happened here as well. Davy told that recruiter: "Jennifer Apple performed poorly. I fired her; I'd not hire her if I were you." Once again, Plaintiff subsequently learned that another candidate had filled the potential position.

172.    Davy lied to recruiters about Plaintiff's qualifications and skills. He did so at least three times. Nothing he said to them was privileged. Clearly what he said would tend to cause special damage (defame her reputation). Davy doing this at least three times shows intentional conduct on his part.

173.    Plaintiff is a highly qualified financial professional who has been actively seeking replacement employment since Ionpath wrongfully terminated her employment with them.

174.    Plaintiff has been hindered in her job search by Davy's verbal disparagement about her work performance.

///

///

///

48

**COUNT EIGHTEEN**
**Violation of California Labor Code,**
**Division 2. Part 3. Chapter 4. Reemployment Privileges §§ 1050-1057**
**(Defendant, Ionpath, Inc.; Defendant, Paul Davy, individually)**

175.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of paragraphs 1 – 41 of this Complaint as if fully stated herein.

176.    Pursuant to California Labor Code, Division 2, Part 3, Chapter 4, § 1050, it is a criminal misdemeanor offense for anyone to, after an employee is no longer in their employ, either voluntarily or involuntarily, to prevent said former employee from obtaining employment, by any misrepresentation.

177.    Pursuant to California Labor Code, Division 2, Part 3, Chapter 4, § 1054, civil remedies are provided:

> In addition to and apart from the criminal penalty provided any
> person or agent or officer thereof, who violates any provision of
> sections 1050 to 1052, inclusive, is liable to the party aggrieved, in
> a civil action, for treble damages. Such civil action may be brought
> by such aggrieved person or his assigns, or successors in interest,
> without first establishing any criminal liability under this article.

Under § 1054, treble damages apply, or, in the alternative, compensatory and punitive damages under § 1050.

178.    Davy, who was acting in the course and scope of his employment with Ionpath, maligned Plaintiff to recruiters calling for employment verification purposes.

179.    Plaintiff is a highly qualified financial professional whose job performance while employed by Ionpath, saved them thousands of dollars.

180.    Plaintiff has been actively seeking replacement employment since Ionpath wrongfully terminated her employment with them.

181.    Plaintiff has been hindered in her job search by Davy's verbal disparagement about her work performance.

182.    Defendants intentionally acted wrongfully in order to interfere with her prospects for a professional position at a new employer, caused Plaintiff economic harm.

183.    The conduct of Ionpath, and each of its agents and employees, as described above, was contemptible and was carried out with deliberate and conscious disregard for Plaintiff's rights.  Ionpath, its agents and employees were aware of the probable detrimental consequences of their conduct and willfully and deliberately failed to avoid those consequences.  Ionpath's conduct constituted malice, oppression or fraud such that Plaintiff is entitled to punitive damages under California law, Civil Code Section 3294, in an amount to punish Ionpath or to set an example.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks relief as follows:

1.    Economic damages for lost wages, employment benefits, and other compensation as a result of Ionpath's wrongful conduct, no less than $750,000; plus, interest;

2.    Noneconomic damages for pain and suffering and emotional distress;

3.    Compensatory damages;

4.    Punitive damages as allowed by law;

///

///

///

///

///

///

///

///

5.    Statutory attorney's fees; and

6.    Costs of suit.

Dated: February 12, 2025                    BENNETT LEGAL SERVICES, INC.

                                    By:    _____/s/Paul V. Bennett_____
                                           Paul V. Bennett
                                           *Attorney for Plaintiff*
                                           JENNIFER APPLE


<u>DEMAND FOR JURY TRIAL</u>

Plaintiff JENNIFER APPLE, hereby demands that this matter be tried by jury.

Dated: February 12, 2025                    BENNETT LEGAL SERVICES, INC.


                                    By:    _____/s/Paul V. Bennett_____
                                           Paul V. Bennett
                                           *Attorney for Plaintiff*
                                           JENNIFER APPLE

COMPLAINT